

THE CITY OF NEW YORK

# LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**ZACHARY W. CARTER**
*Corporation Counsel*

**JOSHUA A. WEINER**
Senior Counsel
Phone: (212) 356-2249
Fax: (212) 356-3509
Email: jweiner@law.nyc.gov

June 1, 2018

**VIA ECF**
Honorable Naomi Reice Buchwald
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   Lauren Calderon v. The City of New York, et al.,
       17 Civ. 3643 (NRB)

Your Honor:

I am a Senior Counsel in the office of Zachary W. Carter, Corporation Counsel of the City of New York, and the attorney representing defendants the City of New York ("City"), Former New York City Department of Corrections ("DOC") Commissioner Joseph Ponte, and Wardens Victor Vasquez and Tony Durante ("Defendants") in the above-referenced matter.  In accordance with Your Honor's individual rules and practices, Defendants respectfully request a pre-motion conference concerning their anticipated motion to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## I.    Background

Plaintiff Lauren Calderon ("Plaintiff") filed the Amended Complaint on May 18, 2018, alleging violations of her civil rights under 42 U.S.C. § 1983 and various state law causes of action.[1]  (See Am. Compl. at ¶¶ 19-113.).  The Amended Complaint pertains to Plaintiff's incarceration at the New York City Department of Corrections ("DOC") Anna M. Kross Correctional Facility on Rikers Island from February 15-18, 2016.  (See id. at ¶ 65.)  While housed in an all-male facility, Plaintiff, who is a transgender female, alleges that she was the "victim of several physical and sexual assaults by male inmates based upon her gender identity and expression during her detention."  (See id. at ¶¶ 69-71.)  Although Plaintiff's requests to be transferred to protective custody "were denied and fell upon deaf ears," after three days, Plaintiff was transferred to transgender housing by an "extraction team."  (See id. at ¶¶ 72-74.)  During

---

[1] The Amended Complaint alleges § 1983 claims for excessive force, cruel and unusual punishment, due process, freedom of expression and association, equal protection, and municipal liability.  (See Am. Compl. at ¶¶ 79-91.)  In addition, the Amended Complaint asserts state law claims for assault and battery; negligent hiring, screening, retention, supervision, and training; negligence, equal protection; and New York Civil Rights Law § 40-C.  (See id. at ¶¶ 92-113.)

the transfer, the extraction team "intentionally/negligently" threw Plaintiff down a staircase, "causing substantial pain and serious physical injury." (See id. at ¶¶ 77-78.)

The Amended Complaint claims that Plaintiff's injuries were the result of "anti-gay/trans animus" among DOC staff, which "New York City policymakers" knew of, yet failed to combat.  (See id. at ¶¶ 51-64.)  As support, it cites (1) an August 19, 2011 "DOC Chief Order," which "prohibits physical or verbal abuse, taunts, and denial of services to an inmate based on sexual orientation"; (2) a Bureau of Justice Statistics ("BJS") study, which "reported that gay inmates are particularly vulnerable to sexual abuse in prison settings, including by staff"; (3) federal regulations that require correctional facilities to train employees "[h]ow to communicate effectively and professionally with inmates, including lesbian, gay, bisexual, transgender, intersex, or gender nonconforming inmates"; and (4) two unrelated lawsuits brought by transgender inmates alleging they were assaulted after their requests for "protective housing" or "transgender housing" were denied.  (See id.)  In addition, the Amended Complaint alleges that the events discussed above were caused by a "deep-seated culture of violence" on Rikers Island that sanctions excessive force used on prisoners by DOC staff.  (See id. at ¶¶ 77-78.)  As support, it cites to various newspaper articles (see id. at ¶¶ 26-29), lawsuits filed against DOC staff that "result[ed] in favorable settlements for the plaintiff" (see id. at ¶ 33), a "Report from United States Attorney Preet Bharara to New York City Mayor Bill de Blasio" (see id. at ¶¶ 33-50), and a "New York City Department of Investigation Report," stating that the DOC's "hiring process…has failed, in some instances, to weed out those who would abuse their position" (see id. at ¶ 89).

## II.   Argument

### a.   Plaintiff's Excessive Force Should be Dismissed.

To state a claim for the use of excessive force, a plaintiff must allege that (1) the force used was deliberate and (2) "the force purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472-73, (2015).[2]  Here, Plaintiff alleges that the "individual defendants" "intentionally and/or negligently" threw her down a staircase.  By admitting that this alleged incident may have been the result of negligence, Plaintiff fails to state a claim for excessive force, which must be premised upon deliberate, or intentional, conduct. See Salim v. Proulx, 93 F.3d 86, 92 (2d Cir. 1996) ("A claim that a state actor acted negligently does not state a deprivation of constitutional rights."); see also Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (federal pleading standard of Rule 8(a)(2) has not been satisfied when the well-pleaded facts allow no more than an inference of a "mere possibility of misconduct").  Moreover, the Plaintiff's claim for excessive force should be dismissed because the supporting allegations are vague.  See Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987) (assertions in a complaint that are nothing more than broad, simple, vague and conclusory statements are patently insufficient to support a claim under Section 1983).  Despite having amended her complaint, Plaintiff fails to provide any details describing how she was "intentionally and/or negligently" thrown down the staircase and does not identify or describe

---

[2] Plaintiff's claim for cruel and unusual punishment under the Eighth Amendment is inapposite.  Upon information and belief, at the time of the alleged incidents, Plaintiff was a pretrial detainee, not a convicted prisoner.  As such, her claim is governed by the Fourteenth Amendment.  See, e.g., Palacio v. City of New York, 06 Civ. 3656 (CLB) (GAY), 2008 U.S. Dist. LEXIS 14891, at *6-8 (S.D.N.Y. Jan. 14, 2008).

any of the fifteen "individual defendants" who were involved in the alleged incident, or the respective roles they played.  As such, Plaintiff's claims for excessive force fail on grounds of vagueness.   See id. at 886 (plaintiff must assert specific claims of direct and personal involvement of a defendant in order to succeed).

### b.  Plaintiff's Deliberate Indifference Claim Should be Dismissed.

Although not labeled as such in the Amended Complaint, Plaintiff appears to allege a claim for deliberate indifference based on the defendants' purported failure to place her in protective custody.  (See Am. Compl. at ¶¶ 67-74.)  To state a claim for deliberate indifference under the Fourteenth Amendment, a plaintiff must satisfy a two-prong test.[3]  First, the plaintiff must plausibly allege he suffered a sufficiently serious constitutional deprivation.  Taylor v. Goorde, 548 Fed. Appx. 696, 698 (2d Cir. 2013).  Second, the plaintiff must plausibly allege that the defendant acted with deliberate indifference.  Id.  "[T]he second prong is satisfied where "the defendant-official acted intentionally . . . or recklessly failed to act with reasonable care to mitigate the risk . . . even though the defendant-official knew, or should have known," of the risk of harm.  See Darnell, 849 F.3d 17 at 35.  Allegations of negligence are insufficient to satisfy the second prong.  See Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996).  Here, Plaintiff fails to allege that, prior to the alleged attacks by other inmates, any defendant knew or should have known that she was at risk of being attacked.[4]  On the contrary, Plaintiff appears to allege that her requests to be placed in protective custody were made *after* she had already been attacked by other inmates.  As such, Plaintiff fails to satisfy the second prong of the deliberate indifference test and her claim fails as a result.  Moreover, Plaintiff's deliberate indifference claim fails for vagueness, as she does not identify or describe the individual defendants whom she allegedly asked for a transfer to protective custody, or provide any details regarding the time, place, or form of her alleged requests.  Plaintiff's deliberate indifference claim fails for this additional reason.

### c.  Plaintiff's Municipal Liability Claim Should be Dismissed.

To impose liability under § 1983 on a municipality for the acts of its employees, a plaintiff must "plead and prove . . . (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) denial of a constitutional right."  Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995).  In other words, the official policy or custom must be the "moving force" behind the constitutional violation.  Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978).  As an initial matter, Plaintiff's municipal liability claim fails because she does not state an underlying constitutional violation.  See, e.g., Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006).  Furthermore, Plaintiff's municipal liability claim should be dismissed because she fails to establish that Defendant City maintained a municipal policy of "widespread tolerance of corrections officer abuse, and widespread indifference to the needs of LGBT inmates" and,

---

[3] Upon information and belief, Plaintiff was a pre-trial detainee at the time of the incident.  As such, any claim for deliberate indifference is analyzed under the Fourteenth Amendment.  Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017)

[4] Further, it is unclear whether Plaintiff is claiming that any defendant knew or should have known of a risk of harm to her solely because she was a transgender inmate housed on Rikers Island.  To the extent that is Plaintiff's argument, it fails because she does not plead that she requested a transfer to a transgender housing unit, let alone made a request out of fear for her safety.

further, fails to show that any such policy caused a denial of her constitutional rights.  Simply put, the Amended Complaint sets forth no evidence of a custom or policy of Defendant City that evinces such abuse, indifference, or animus towards gay or transgender people.  The BJS study and Code of Federal Regulations, cited to in the Amended Complaint, do not constitute evidence of Defendant City's "official policy or custom" regarding transgender inmates and neither come even close to showing a policy that caused constitutional harms to Plaintiff.  In fact, Plaintiff's citation to the DOC Chief's Order which "prohibits physical or verbal abuse, taunts, and denial of services to an inmate based on sexual orientation" contradicts Plaintiff's claims.  (See Am. Compl. at ¶ 53.).  Moreover, beyond citations to two unrelated lawsuits that involve transgender Plaintiffs, one of which is still pending in this Court, Plaintiff has failed to articulate any other instances similar to hers such that a policy or practice could be inferred.  See Simms v. City of New York, 480 Fed. Appx. 627, 630 (2d Cir. 2012) (citing to another civil lawsuit does not state a claim for municipal liability because the fact of the lawsuit shows only that the allegation was made, "not that those violations actually occurred").  Plaintiff, therefore, is left with the allegations pertaining to her own incident, which are insufficient to establish municipal liability. See City of Okla. City v. Tuttle, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell . . . .").

To the extent Plaintiff alleges that Defendant City sanctioned a "deep seated culture of violence" among DOC employees at Rikers Island, Plaintiff primarily relies on a "Report" that pertains to adolescent male inmates only.[5]  (See id. at ¶¶ 30, 34-35, 38-50.)  In any event, it is unclear whether Plaintiff is alleging that she was subjected to violence by DOC employees, as the Amended Complaint states only that she was "intentionally and/or negligently" thrown down a staircase.  (See id. at ¶ 76.)  Plaintiff's allegation that Defendant City's "hiring process" was insufficient is similarly defective.  (See id. at ¶¶ 54, 89, 97.)  The Amended Complaint fails to state what Defendant City's "hiring process" was, let alone how it was insufficient, and does not link such process to any constitutional violation suffered by Plaintiff.  Plaintiff's claim for municipal liability, therefore, should be dismissed.[6]

### d.  Plaintiff's Supervisory Liability Claims Should be Dismissed.

Plaintiff purports to sue former DOC Commissioner Joseph Ponte and Wardens Durante and Vasquez under a theory of supervisory liability.  According to the Amended Complaint, Commissioner Ponte was responsible for the "policy, practice, supervision, implementation, and conduct concerning all DOC matters" as well as the training of DOC personnel and Wardens Durante and Vasquez were "responsible for the supervision" of DOC. (See id. at ¶¶ 14-16.)  Yet, Plaintiff does not – and cannot – allege that these defendants had any personal involvement in the purported incidents.  Plaintiff's conclusory allegations, therefore, are insufficient to establish a claim for supervisory liability.  See Vogelfang v. Capra, 889 F. Supp.

---

[5] Upon information and belief, Plaintiff was 23 years old when the events described in the Complaint allegedly transpired.  (See 8/4/2014 Report at p. 1 ("We write to report the findings of the investigation of the United States Attorney's Office for the Southern District of New York into the treatment of adolescent male inmates, between the ages of 16 and 18, at New York City Department of Correction jails on Rikers Island.") (available at https://www.justice.gov/sites/default/files/usao-sdny/legacy/2015/03/25/SDNY%20Rikers%20Report.pdf).

[6] The Amended Complaint barely mentions Plaintiff's claims for violation of her due process rights, her right to equal protection, and her rights under the First Amendment and fails to allege facts that would support such claims. As such, those causes of action are insufficiently pled and must be dismissed as well.

2d 489, 502 (S.D.N.Y. 2012) ("To the extent [the plaintiff] may argue that [two of the defendants] failed to properly supervise subordinates who were violating her rights, the mere fact that a defendant possesses supervisory authority is insufficient to demonstrate liability for failure to supervise under § 1983.")  As such, Plaintiff's claims for supervisory liability should be dismissed.

### e.   All of Plaintiff's State Law Claims Should be Dismissed.

"Compliance with a demand for a General Municipal Law § 50—h examination is a condition precedent to the commencement of an action against a municipal defendant, and the failure to so comply warrants dismissal of the action." Hymowitz v. City of New York, 122 A.D.3d 681, 682 (App. Div. 2d Dept. 2014).  Although the Complaint alleges that, "[p]ursuant to New York State General Municipal Law 50-E, Plaintiff filed a timely Notice of Claim with the New York City Comptroller," she, apparently, failed to comply with Defendant City's demand for an examination under New York State General Municipal Law 50-h.  (See Am. Compl. at ¶ 9.)  Plaintiff's failure to appear for her 50-h hearing is fatal to her state law claims.  In the alternative, the Court should decline to exercise jurisdiction over Plaintiff's state law claims.  See Oneida Indian Nation of N. Y. v. Madison County, 665 F.3d 408, 437 (2d Cir. 2011) ("on the usual case in which all federal-law claims are eliminated before trial," courts should decline to exercise jurisdiction over the remaining state-law claims.).

Based on the forgoing, Defendants respectfully request a pre-motion conference regarding their anticipated motion to dismiss the Amended Complaint.

Respectfully submitted,

_____/s/_____
Joshua A. Weiner
*Senior Counsel*

cc:   Rebecca M. Heinegg (*VIA ECF*)
      Sarah Kunstler
      *Attorneys for Plaintiff*
      277 Broadway, Suite 1501
      New York, NY 10007